# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **JOHN BRILEY** | **CIVIL ACTION NO. 3:14-cv-0713** |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **WEST MONROE POLICE DEPARTMENT, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff John Briley, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on March 31, 2014. When he filed the complaint he was a pre-trial detainee in the custody of the Ouachita Parish Sheriff awaiting trial on shoplifting charges filed by the West Monroe Police Department. While the complaint was pending initial review, he was convicted of unauthorized use of a movable on April 14, 2014[1] and he was released from custody on April 24, 2014.[2] In a letter dated May 28, 2014 he advised that he was again incarcerated, this time at the England City Detention Center, England, Arkansas. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

---

[1] See Doc. 10, p. 8, "On 4-14-2014 plaintiff's charges were dismissed and he was convicted of a misdemeanor, unauthorized use of movable property of the (6) six lock he had yet to purchase upon entering the Garden Center that were in his shopping cart."

[2] (See Ouachita Parish Corrections, Inmate Summary – Briley, John Barry at http://www.opso.net/bookings/)

### *Statement of the Case*

In his original complaint he claimed that he was the victim of excessive force on the part of Officers Garrett and Horton, the officers who arrested him and transported him to the Ouachita Parish Corrections Center; and that those officers and others stole plaintiff's personal property. He also implied that he was the victim of a false arrest and imprisonment. He prayed for the return of his property and compensation for the damages to his teeth. Plaintiff sued the West Monroe Police Dept., Officers Garrett and Horton, Donnie Plunk, the tow truck operator who was directed to tow plaintiff's truck following his arrest,  and unidentified "spotters" employed at the Wal Mart in West Monroe. [Doc. 1][3]

---

[3] In his original complaint, plaintiff alleged that he is the owner of "Toy Store, LLC", a company that provides inflatable play equipment for out door fairs and fund raisers. He also owns a truck and trailer with which he transports this equipment along with the tools necessary to maintain and erect the equipment.

On March 5, 2014 plaintiff was arrested by Officers Garrett and Horton at the Wal Mart in West Monroe and charged with shoplifting. According to plaintiff these officers applied unnecessary force in arresting and restraining him and then drove recklessly and at a high rate of speed to the police station where plaintiff was pulled out of the police car by his ankles and feet.

Once at the Police Station, unidentified officers ordered plaintiff to sign papers giving permission for defendant Plunk to take possession of plaintiff's truck and property; however, plaintiff refused and invoked his right to counsel.  Plaintiff was then placed in a cold holding cell where he claims to have overheard defendants Garrett, Horton, and Plunk plotting to keep plaintiff in jail until such time as they could auction off his property and split the proceeds among themselves.  In furtherance of this plot they invented an alias identification of plaintiff to establish a lengthy criminal history.

He was then driven recklessly and at a high rate of speed to the Ouachita Parish Corrections Center where he was pulled from the police car by his hands and feet causing him to strike his face on the pavement damaging two front teeth.

On March 8 or 9, 2014 a colleague of plaintiff's offered to pay the tow and storage fees on plaintiff's truck and equipment, but Plunk refused to accept payment and Officer Garrett refused to intervene.  Plaintiff was likewise unsuccessful in filing pro se pleadings seeking the return of

On April 30, 2014 he was ordered to amend his complaint to provide the name of each person who violated his rights; to describe what each defendant did to violate his rights; to state the place and date where each violation occurred; and to describe the injury sustained as a result. He was also instructed that he could only sue "state actors" and that therefore his claims against the unnamed Wal Mart employees and tow truck driver were probably subject to dismissal unless he could establish that they were acting under color of state law at the time of the events complained of. [Doc. 7]

On May 24, 2014 he submitted a 17-page hand-written amended complaint adding numerous additional defendants and claims.  With regard to the incidents alleged to have occurred in Ouachita Parish, plaintiff identified the following defendants – West Monroe Police Officer Thomas Garrett; Officer Doug (last name unknown) of the Metro Drug Task Force; West Monroe Police Officer Darrell (last name unknown); Donnie Plunk Tow and Recovery, partial owner of "Kado" or "Kato" who is claimed to be in the employ of the West Monroe Police Dept. and the Federal Task Force;  Patricia Wycoff who is alleged to be in the employ of the West Monroe Police Department and the Federal Government; and Louisiana Governor Bobby Jindal. He also alleged that West Monroe Attorney Dawn Harper "is being sued in her official and individual capacity for injunctive relief, testimony, production of evidence and at all times was under color of authority. She is entitled to compensation and has a vested interest to this cause of

his property. On March 22-25, 2014 his friend presented a release and proof of insurance to Plunk who refused to accept payment of fees and release the property.

Plaintiff prayed for the return of his personal property without having to pay the towing or storage fees, the stay of any contemplated forfeiture proceedings, and, the payment of the cost to repair plaintiff's teeth which were injured.

action."

Plaintiff also identified the following additional defendants – Agent Bart Larocco of the Federal Bureau of Investigation, Tyler Texas ("whose actions reached the territorial borders of Monroe, Louisiana"); Attorney Natalie Fletcher, Tyler, Texas; United States Attorney General Eric Holder; the Arkansas Community Corrections and or Board of Parole in Pine Bluff, Arkansas; President Obama; and, the Federal Bureau of Prisons, Prisoner Re-entry Program.

Plaintiff claimed that on February 17, 2011 he was discharged from BOP custody in Boston, Massachusetts, after the BOP confirmed that the Arkansas Parole Board had withdrawn their detainer. Upon his release he had served a sentence of 11 years.  He complained that during the time he was in BOP custody he unsuccessfully applied to participate in the prisoner re-entry program initiated by President Obama. Plaintiff submitted grievances to President Obama and Attorney General Holder but his grievances were ignored.

In any event, upon his release, plaintiff relocated to Florida where he was recruited by Federal agents who reminded him that the Muslim community had a desire to cause him harm after he testified in two criminal prosecutions involving alleged Islamist terrorists, one of whom had threatened the life of a federal judge.  In July 2011 plaintiff declined the invitation of federal agents to perform additional undercover operations. Thereafter he was arrested and detained as a parole violator on a warrant issued by the State of Arkansas; he was discharged from the Orange County Jail in Orlando, Florida. He was arrested again in Biloxi, Mississippi on the Arkansas parole violation warrant. He spent time in jail and was ultimately released on December 21, 2012. He returned to Florida and was employed by Rukus Concessions. He saved his money and invested in an amusement company.

4

In August/September 2013 he was in Indiana where he was once again approached by federal agents who questioned him about communications he sent to the Attorney General about illegal drug dealers in Arizona.  Plaintiff claims that he was followed by Federal Agents thereafter and arrested in Canton, Texas in November 2013. The pretext for the arrest was the Arkansas parole warrant but once he was arrested the detainer was again dismissed.

Upon his release from custody in Canton, Texas, he retained Natalie Fletcher federal counsel to deal with the constant arrests. Plaintiff and Ms. Fletcher met with FBI Agent Larocco in Tyler, Texas. Larocco instructed plaintiff to gather intelligence on behalf of the government and in return agreed to expunge the Arkansas warrant.

Plaintiff then went to Monroe, Louisiana in March 2014 with his amusements business. On March 5, 2014, he was packed and ready to depart for Mississippi when he was arrested for shoplifting at the West Monroe Wal Mart. According to plaintiff, Officer Garrett, the arresting officer, had been advised by an informant that plaintiff was transporting drugs.  Plaintiff refused to permit the search of his vehicle and Garrett, using false information, obtained a search warrant.  Plaintiff was arrested when $600 worth of merchandise was discovered in the vehicle. (Plaintiff, of course, claims that the property was his.)  His vehicle was towed by Plunk on instructions from Garrett.  According to plaintiff Plunk is employed by the West Monroe Police Dept., and provides them a percentage of his fees. On March 6, 2014 plaintiff authorized a friend, Delmar Giles to pay the towing and storage fees and take possession of plaintiff's vehicle and property, however Plunk refused to release the property.  On April 14, 2014, the shoplifting charges were dismissed; however, plaintiff was convicted of unauthorized use of movables. While plaintiff was incarcerated at Ouachita Corrections Center, the State of Arkansas issued yet

another detainer and warrant and then later dropped it. Plaintiff was released from custody on April 30, 2014 and FBI agents "Doug" and "Darrell" escorted him to "Metro Operations" where they attempted to recruit him to manufacture methamphetamines, to deal drugs, fence stolen property and develop criminal intelligence to supply them with arrests.  Plaintiff declined their offer and related these events to attorney Dawn Harper. On May 7, 2014 Randy and Patricia Wycoff, who plaintiff described as friends of Officer Garrett and "undercover part time employees" of the West Monroe Police Dept., approached plaintiff with an offer to pay for the towing and storage fees and provide room and board if plaintiff would "participate in crimes of drugs financial and agree to murder Patricia Wycoff's neighbor, Dana Toney by burning her home down." According to plaintiff, Wycoff "is a full time drug dealer [who] allows her under age children to engage in Satanic rituals, sex alcohol and drug use." According to plaintiff, "She also contacted Garrett and 'Kato' to set plaintiff up on criminal charges so she could have a portion of his $173,000.00 in assets."

On May 14-15, 2014, plaintiff advised Dana Toney of Wycoff's plans to burn her house down. He also told Attorney Harper "... but was careful not to say anything because he had caught the Wycoff's hacking and spoofing the telephones and computers of all the neighbors including his own cell phone in addition to stealing his identification and applying for disability food stamps etc. online, hacking his email accounts, posting porn photos of herself on Craigs List and robbing unsuspecting men of their possessions, all while employed at West Monroe Police Dept., having sex with some of the police employed at W. Monroe Police Dept.; he also viewed evidence where she was photo shopping the Toney's home to make it appear the Toney's were involved in criminal activity, and swore she would own their property."

6

According to plaintiff, when Wycoff and Garrett learned that plaintiff had filed the instant civil rights complaint on May 17, 2014, they were able to get with FBI Agents "Doug" and "Darrell" and they were successful in persuading the Arkansas Parole Board to re-activate their detainer/warrant.

Plaintiff then summarized his claims against each defendant as follows:

(1) Garrett and Plunk unlawfully removed plaintiff's property valued at $173,000 from the Wal Mart parking lot in violation of plaintiff's rights to due process as guaranteed by the Fifth and Fourteenth Amendments;

(2) Garrett, Wycoff and "Kado or Kato" conspired to cause plaintiff's unlawful arrest and detention at Ouachita Parish Corrections Center and, in essence, stole plaintiff's property and assets;

(3) Harper agreed to represent plaintiff but the actions of the defendants named above deprived him of the means to pay her for her legal services;

(4) Garrett provided false information to a judge in order to obtain a search warrant for plaintiff's truck and falsified the affidavit of arrest and detention in order to increase the amount of bail;

(5) Garrett falsely charged plaintiff with shoplifting and inflated the tow and recovery bill depriving plaintiff of rights guaranteed by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments;

(6) Garrett "wrecklessly (sic) and without care to plaintiff's safety and health drove him from W. Monroe Police Dept. to Ouachita Parish Jail in a manner that threw him around the hard back seat lodging him face down, wedged in between the back seat and front seat..." then "...

7

pulled him out face down with his hands cuffed behind him..." resulting in two broken teeth in violation of the Eighth Amendment;

(7) Larocco, the BOP, Attorney General Holder, and President Obama "... have the responsibility and authority to protect witnesses who have given evidence against terrorists..." but have apparently failed to do so and have denied plaintiff entry into the witness protection program;

(8) President Obama, the BOP, and Attorney General Holder have refused to allow plaintiff entry into the Prisoner's Reentry Program;

(9) Governor Jindal permitted defendants Garret, Plunks, Wycoff, "Doug and Darrell" to violate the law;

(10) Arkansas Community Corrections and Parole Board of Arkansas have maintained an unlawful detainer/warrant which has caused plaintiff to be arrested on numerous occasions; and,

(11) Wycoff stole plaintiffs identification and applied for Social Security benefits and food stamps in plaintiff's name and she hacked his computer and telephone and set up surveillance of his room and posted pictures of him to the internet.

### *Law and Analysis*

### *1. Screening*

Plaintiff was a prisoner when he filed this suit; it appears that he was released, then rearrested and is now once again incarcerated. When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such

relief. 28 U.S.C.§§ 1915 and 1915A.

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

Nevertheless, in order to be afforded the benefits of this assumption a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,*  556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *see also Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97. The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint is frivolous if it lacks an arguable

9

basis in law (i.e. it is based upon a undisputably meritless legal theory) or in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir.1995); *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Herndandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

### 2. False Arrest

In both his original and amended complaints plaintiff implied that he was falsely arrested and imprisoned and he blamed Officer Garrett and others who he claimed engaged in a conspiracy. Although plaintiff was not convicted of the original charge of theft by shoplifting, by his own admission he was convicted of unauthorized use of a movable and, according to his amended complaint that charge arose out of the same facts as the shoplifting charge.

In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the United States Supreme Court determined,  "[I]n order to recover damages for allegedly unconstitutional ... imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*, 28 U.S.C. § 2254."  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983. *Heck*, 512 U.S. at  487, 114 S.Ct. at 2372. The Supreme Court imposed this requirement on §1983 plaintiffs in order to avoid collateral attacks by plaintiffs on convictions against them that are "still outstanding." *Id.* at 486, 114 S.Ct. at 2371 ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments

applies to §1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement ...")

If the court were to grant plaintiff the damages he seeks  under the facts of this case, such ruling would necessarily implicate the validity of his conviction and sentence.  Accordingly, under *Heck*, plaintiff must demonstrate that his conviction and sentence have  been reversed, invalidated, or expunged <u>prior</u> to bringing the instant action. *See Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996).  Plaintiff has failed to make such a showing. Consequently, his claims for monetary damages against the defendants for false arrest and imprisonment are "legally frivolous" within the meaning of 28 U.S.C. §1915. *Hamilton*, 74 F.3d 102-103.  (A "claim which falls under the rule in *Heck* is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." )

### 3. Deprivation of Property

In both the original and amended complaints plaintiff also complained that his property was taken from him by Officer Garrett and others acting in conspiracy.  Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States.  42 U.S.C. §1983.  Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under §1983.

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Constitution, Amendment XIV.  However, the jurisprudence makes it abundantly clear that a civil rights

plaintiff's claim for random deprivation of personal property is not cognizable under §1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

Even in instances where intentional deprivation occurs, as is the case alleged herein, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis v. Bayless*, 70 F.3d 367, at 375 (5th Cir. 1995), citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations (although bordering on the delusional), demonstrate that an intentional, random, and unauthorized deprivation occurred when plaintiff's vehicle and property were seized by public officials in conjunction with their arrest and prosecution of the plaintiff for shoplifting and then unauthorized use of a movable. Except in drug related prosecutions, Louisiana law does not generally authorize the seizure and forfeiture of personal

12

property seized in conjunction with a criminal prosecution. Therefore, the conduct alleged is clearly random and unauthorized.

If adequate state law remedies are available, no further due process is required under the Constitution.  Louisiana law provides plaintiff the opportunity to seek redress for either the negligence or the intentional torts committed by these public officials.  See, La. Civil Code, Article 2315. This provision of state law which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine.  Therefore, plaintiff's claim is frivolous.

### 4. Excessive Force

In his original complaint, plaintiff alleged that Officers Garrett and Horton used excessive force against him when they transported him to the Ouachita Parish Corrections Center. In his amended complaint he alleged fault only on the part of Officer Garrett and therefore it appears that he now seeks to cast fault only upon that officer with regard to his excessive force claim.

When a complaint of excessive force arises during the course of an arrest, as is the case herein, the claim is analyzed under the Fourth Amendment's "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 394–395 (1989).  To state a claim the plaintiff must allege sufficient facts to establish: (1) that he suffered an injury, (2) that the injury directly and uniquely resulted from the application of force that was clearly excessive to the need, and (3) that the excessive use

13

of force was objectively unreasonable at the time of the incident, without regard to the arresting officer's underlying intent or motive. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999); *Graham v. Connor*, 490 U.S. 386, 397 (1989). The injury complained of must be more than merely *de minimis. Williams*, 180 F.3d at 703–04, decision clarified on reh'g, 186 F.3d 633 (5th Cir.1999).

In his original complaint plaintiff complained that his two front teeth were prosthetic "screw in types" which had been "installed last year", and that these teeth were "busted" and valued at $2100. [Doc. 1] Likewise, in his amended complaint he alleged only that two teeth were broken. Given the fact that these teeth were prosthetics, it appears that plaintiff complains of a *de minimis* injury at best and therefore fails to state a claim for excessive force.

**5. Additional Defendants**

In his amended complaint plaintiff added additional claims against additional defendants not named in his original complaint, namely Agent Bart Larocco of the Federal Bureau of Investigation, Tyler Texas; Attorney Natalie Fletcher, Tyler, Texas; United States Attorney General Eric Holder; the Arkansas Community Corrections and or Board of Parole in Pine Bluff, Arkansas; President Obama; and, the Federal Bureau of Prisons, Prisoner Re-entry Program.

 Section 1983 does not contain a venue provision; thus, venue is determined under the general venue provisions set forth in Title 28 U.S.C. § 1391.  When, as here, a civil action is not premised solely upon diversity jurisdiction, it may be brought only in (1) a judicial district where any defendant resides, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).  None

of these defendants reside in the Western District of Louisiana and the events or omissions complained of herein appear to have occurred elsewhere as well.  With regard to the claims against these additional defendants, venue in the Western District of Louisiana appears to be improper.

### 6. Additional Causes of Action

Finally, as noted above, plaintiff's amended complaint alleges violations of his civil rights by these additional defendants.  He claims that Agent Larocco, the BOP, Attorney General Holder, and President Obama "... have the responsibility and authority to protect witnesses who have given evidence against terrorists..." but have apparently failed to do so and have denied plaintiff entry into the witness protection program. He also claims that President Obama, the BOP, and Attorney General Holder have refused to allow him entry into the Prisoner's Reentry Program.  He claimed that the Arkansas Community Corrections and Parole Board of Arkansas have maintained an unlawful detainer/warrant which has caused plaintiff to be arrested on numerous occasions.  Finally, he claimed that Governor Jindal permitted defendants Garret, Plunks, Wycoff, "Doug and Darrell" to violate the law.

Even if this Court were the proper forum to litigate these claims, it is clear that plaintiff has failed to state claims for which relief may be granted. Plaintiff's amended complaint is fanciful or delusional at worst and, at best is merely conclusory with respect to the additional defendants and causes of action alleged. Plaintiff has not shown that President Obama or Attorney General Holder had any control over his placement in the witness protection program or the reentry program operated by the BOP. His claim that Governor Jindal "permitted" defendants Garret, Plunks, Wycoff, "Doug and Darrell" to violate the law is clearly delusional, as are his

15

claims concerning his alleged recruitment by various agents. These fanciful claims call into question the veracity of all of his complaints.

### Conclusion and Recommendation

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, June 18, 2014.

**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**

16